IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CAROLYN FORD,<br><br>   Plaintiff,<br><br> vs.<br><br>JALISCO MARKET, LLC, a Utah Limited Liability Company, MARK A. WILSON, an individual, and JOHN DOES, I-X, XYZ Corporations and/or Limited Liability Companies I-X.<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER DENYING OBJECTION TO MAGISTRATE'S ORDER, DENYING DEFENDANTS' RENEWED MOTION TO QUASH, AND GRANTING MOTION TO DISMISS**<br><br>Case No. 2:16-cv-619-CW-BCW<br><br><br>Judge Clark Waddoups |

Before the court are Jalisco Market, LLC and Mark A. Wilsons' ("Defendants") Motion to Dismiss for Mootness, or in the Alternative to Dismiss the Second, Third and Fourth Causes of Action ("Motion to Dismiss") (ECF No. 26.), and Plaintiff's Objection to Magistrate's Order Denying Defendants' Renewed Motion to Quash ("Objection to Motion to Quash"). (ECF No. 55.) For the reasons set forth below, the Court DENIES the Objection to Motion to Quash and GRANTS the Motion to Dismiss with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

On June 14, 2016, Plaintiff Carolyn Ford ("Ford") brought this action against Defendants for alleged violations of Title III of the Americans with Disabilities Act ("ADA"). (ECF No. 2.) Ford's Complaint contains four causes of action: 1) injunction for violation of Title III of the ADA; 2) declaratory relief; 3) nuisance under §78B-6-1101 of the Utah Code; and 4) unjust

enrichment. Ford alleges she "visited the Premises on several occasions, using her wheel chair, and has encountered barriers to access." (*Id*. at ¶ 23.) Ford's claims regarding barriers to access refer only to the exterior of the premises. Specifically, Ford avers the following six architectural barriers to access:

1) no van accessible space, access aisle or sign as required by ADA Accessibility Guidelines ("ADAAG");

2) no space includes a sign located sixty (60) inches above the ground surface so that it is not obscured by a vehicle parked in the space;

3) no space includes a sign with the International Symbol of Accessibility as required by ADAAG;

4) handicapped spaces have surface areas with slopes exceeding the 1:48 (2010) and 1:50 (1991) maximum allowed ADAAG (with slopes as great as 4.8%);

5) the ramps leading to the entrances exceed the maximum allowable slope of 1:12 under ADAAG (with slopes as high as 15.3%); and

6) there is no accessible route to the entrance of the business in violation of ADAAG.

7) any accessible route would have to cross barriers to access that would violate ADAAG requirements regarding permissible changes in level.

(ECF No. 2 at ¶¶ 25-31.) Ford only references the interior of the premises through the supposition she "believes the Premises have additional violations of the ADAAG including, but not limited to, accessibility problems with the bathrooms." (*Id*. at ¶ 37.)

On August 18, 2016, a Scheduling Order was entered; the Amended Pleadings deadline was October 4, 2016, and the expert report deadline for the party bearing the burden of proof was January 6, 2017. (ECF No. 21.) On September 7, 2016, Defendants issued their first written discovery request, asking Ford, among other things, to "Identify specifically any and all items which in your opinion remain to be undertaken to make [Defendants'] property ADA compliant

and which are readily achievable, as defined by law." *See* Defendants' First Set of Discovery Requests to Plaintiff, Interrogatory No. 3. (ECF No. 32 at 6-10.)

Also, on September 7, 2016, Ford issued a Request for Entry Upon Land for Inspection pursuant to Rule 34(a)(2) ("Rule 34 Request"). (Dkt. No. 23-1.) The Rule 34 Request sought entry to the Defendants' Premises on October 26, 2016 at 10:00 a.m. and "shall be conducted by Plaintiff's counsel." (ECF No. 23-1.)

On September 21, 2016, Defendants' counsel sent a "meet and confer letter" concerning the Rule 34 Request. (ECF No. 23-2.) In the letter, Defendants' counsel expressed concern about Ford's counsel conducting the inspection, stating that is "the role of an expert." (*Id.*) Likewise, Defendants' counsel clarified the market only has one bathroom, and attached "photos of the interior aisles of the store as well as photos of the bathroom available to the customers of the Market." (ECF No. 23-2 at 5-10.)

A week later, on September 27, 2017, Defendants filed a Motion to Quash. (ECF No. 23.) Defendants opposed the Rule 34 Request on the following grounds: 1) by conducting the inspection Plaintiff's counsel would become a witness and thus need to be disqualified; 2) Plaintiff's counsel was not qualified as an expert to conduct the inspection; 3) Ford's Complaint did not identify any ADA violations in the interior of the Premises; 4) in the *Doran v. 7-Eleven* case cited by Ford, the inspection was conducted by an expert; and 5) Ford's counsel had visited the market on September 22, 2017, and chose not to enter the interior of the premises. (ECF No. 23-2 at 12.)

On October 4, 2016, the deadline to amend the pleadings, Ford did not amend her Complaint to include any allegations pertaining to ADA violations in the interior of the premises.

On that date, however, Defendants filed a Motion to Dismiss, arguing they had remedied the

ADA violations alleged in Ford's Complaint. (ECF No. 26.)  The motion was accompanied by

declarations.  The declarations, however, lacked the perjury language required by 28 U.S.C. §

1746 and are thus inadmissible.

Defendants' Motion to Dismiss also contained the following averments:

> Defendants have been named in one of 72 cases brought by Carolyn Ford and her
> attorney son since April 2016.  Nearly every Judge and Magistrate Judge for the District
> of Utah currently presides over at least one of their lawsuits. . .  Of the 19 lawsuits filed
> in June, this case and 17 others were against businesses and property owners operating
> within the same five blocks on State Street in American Fork.  The premises at issue also
> ascend in order by address, as if the attorneys for Ford simply drove down State Street
> searching for potential businesses to sue.

(ECF No. 26 at 4-5.)

Four days later, on October 8, 2016, Ford responded to Defendants' first discovery

request.  Ford's response to Interrogatory No. 3 was as follows: "Plaintiff objects to

Interrogatory No. 3 as it asks her to offer an expert opinion."  (ECF No. 32 at 17.)  In the

discovery responses, Ford also admitted she has not visited the Defendants' property since the

commencement of the instant litigation.  (*Id*.)

On October 14, 2016, Defendants' counsel sent another "meet and confer" letter to

Ford's counsel. (ECF No. 32 at 22.)  This letter states in relevant part:

> Interrogatory No. 3 did not ask for an expert opinion, but rather the opinion of Mrs. Ford.
> She claims in her complaint  . . .  that she "believes" there are problems in the interior of
> the Market. If there are problems of which she has knowledge, we need to know. . . We
> are entitled to know all the ADA violations she is claiming.  You have admitted she has
> not been in the Market since filing the complaint. Therefore, any problems she "believes"
> are present must have been there on the several prior visits she is claiming to the inside of
> the Market. We are entitled to know what she is claiming.

(*Id*.)    On October 18, 2016, Judge Wells denied Defendants' Motion to Quash. (ECF No. 29.)

Judge Wells' Order explained:

> the scope of said inspection shall be limited to the allegations in the Complaint, and thus, can include inspecting any 'accessibility problems with the bathrooms' and 'architectural barriers to access,' and therefore can include parts of both the exterior and interior of the premises.

(ECF No. 29.)  Judge Wells' Order, however, advised Ford's counsel as follows:

> Plaintiff's counsel are cautioned, that while the Court will permit counsel to conduct said inspection, such actions may have ramifications on this case in the future. Plaintiff's counsel are not qualified experts, and while they are permitted to undertake this inspection, they should consider whether they will become necessary witnesses at trial, whether proper foundation can be laid for the measurements, photographs, or other information they glean at the inspection, and whether the findings can be independently authenticated.

(*Id.*)

On October 27, 2016, Ford provided a Supplemental Response to Plaintiff's First Set of Discovery Requests.  (ECF No. 32 at 25-34.)   In response to Interrogatory No. 3, Ford stated:

> Plaintiff restates her objection to Interrogatory No. 3 to the extent it asks her to offer an expert opinion as to what violations of the ADA exist on the Defendants' Premises. Plaintiff objects to Defendants' attempt to compel her to identify all ADA violations remaining on Defendants' Premises before Plaintiff and her counsel have had the opportunity to conduct the Rule 34 inspection of the Premises authorized by Magistrate Wells in her Order of October 18, 2016[.]

(*Id.* at 30-31.)  Thereafter, on November 1, 2016, Ford's counsel filed an Ex-Parte Motion for Extension of Time to Respond to the Motion to Dismiss.  (ECF No. 30.)  The basis for seeking an extension was that the response to the Motion to Dismiss was now due on the same day as the scheduled inspection, Friday, November 4, 2016.  (*Id.* at 2-4.)  According to Ford's counsel, without the inspection Ford could not confirm what barriers to access alleged in the complaint had been remedied.  (*Id.*)

Defendants opposed an extension, arguing Ford should respond to the motion with respect to claims two, three and four. (ECF No. 32.) Defendants also expressed concerns that Ford would improperly use the inspection as a "witch hunt" to seek ADA violations exceeding the scope of the Complaint. (*Id*.) To alleviate that fear, Judge Wells again directed Ford to answer Interrogatory No. 3 prior to allowing the Rule 34 inspection to proceed. Judge Wells specifically required Ford to identify "what 'accessibility problems with bathrooms' and what 'architectural barriers to access' . . . remain on the premises." *See* Order on Motion for Extension of Time to Respond to Motion to Dismiss. (ECF No. 35.)

Ford again supplemented her response to Interrogatory No. 3. This time, however, Ford's supplementation consisted of a generic list of 29 potential ADA violations that included "toilet," "handrails," and "toilet compartments." (ECF No. 36-1.) The photographs of the market's bathroom attached to the "meet and confer letter" sent by Defense counsel on September 21, 2016, clearly show a toilet, two handrails and toilet compartments. (ECF No. 23-2.) Defendants thus renewed their motion to quash on November 4, 2016. (ECF No. 36.)

Judge Wells heard arguments on the motion for extension of time on January 18, 2017. (ECF No. 49.) She deferred ruling on the motion for 14 days, and ordered Ford to provide a complete and correct response to Interrogatory No. 3, explaining as follows:

> Here, however, the Plaintiff's Complaint and response to Defendants' Interrogatory No. 3 fail to convey Plaintiff's *actual* knowledge of the barriers she has *actually* encountered on her alleged visits to the market. Instead, the Complaint and Plaintiff's response to Defendants' Interrogatory No. 3, are notably vague and lack identification of specific barriers inside Defendants' premises that Plaintiff came across during her alleged visits to the premises. The only detailed allegations in Plaintiff's Complaint are those relating to the parking lot, which were measured by Plaintiff's son, who is also her attorney. Even those allegations come across calculated and don't really describe Plaintiff's experience using Defendants' parking lot and what *actual* challenges she encountered getting to and

from the market. The general vagueness of Plaintiff's responses call into question whether she has actually suffered an injury-in-fact.

Contrary to counsel's concerns expressed at the hearing, the Court does not expect Plaintiff to be an expert in ADA compliance, but the Court does expect the Plaintiff to be able to give a genuine explanation, in lay-person terms, about what barriers she *actually* encountered when she visited the market. Once the barriers she encountered are sufficiently identified and standing is established, an inspection, if approved by the Court, can take place to see if those barriers are in fact violations of the ADA.

(ECF No. 48 at 3-4.) Ford proceeded to provide a Third Supplemental Response to Plaintiff's First Set of Discovery Requests--the fourth response to Interrogatory No. 3. This time Ford responded to Interrogatory No. 3 as follows:

The aisles were difficult to navigate with a walker due to product displays and product placement. For instance, a long meat counter was innaccessable[sic] to Plaintiff due to products being stacked in front of the counter. Carts are located far away from the entrance next to a furnace located in the main shopping area and Plaintiff had to walk through the store to retrieve a cart. . . . The seating area was difficult to navigate with her walker and she struggled to sit and rise after sitting. The counters for ordering food and for grocery checkout were also difficult for her to lean against while making order/payment and she didn't believe she could have navigated the areas sitting in her walker or in her wheelchair.

(ECF No. 51-1 at 8-9.) Judge Wells reviewed Ford's response and the parties' additional briefing related to Defendants' Renewed Motion to Quash, and again denied Defendants' Motion to Quash on February 21, 2017. (ECF No. 54.) This time, however, Judge Wells limited the inspection to the "allegations in the Complaint, which are further limited by Plaintiff's response to Defendants' Interrogatory No. 3." (*Id*. at 3.) Accordingly, she allowed Ford to conduct an inspection in the "store aisles, the meat counter area, the area between the entrance and shopping carts, the seating area near the hot food service, the ordering counter at the hot food service, and the checkout counter for groceries." (*Id*. at 3-4.)

On March 7, 2017, Ford filed Plaintiff's Objection to Magistrate's Order Denying Defendant's Renewed Motion to Quash ("Objection to Motion to Quash"), asserting she is entitled to inspect the full premises, not just the areas enumerated in Judge Wells' Order, pursuant to *Steger v. Franco*, 228 F.3d 889 (8th Cir. 2000) and *Doran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008). (ECF No. 55.) Ford's counsel, her son, inspected the premises on March 15, 2017, without filing a motion to expedite the Objection to Motion to Quash. (*Id*. at 6.)

On April 26, 2017, the court issued an Order to Show Cause. (ECF No. 60.) In the Order to Show Cause the court noted that in reviewing Ford's Complaint "it is not apparent" the Defendants are subject to the ADAAG. (*Id*.) Ford filed a response with the following statements: 1) Ford is "not a tester;" 2) Defendants as property owners are subject to the ADA; 3) Defendants' premises violate both the 1991 and 2010 Standards of the ADAAG; and 4) Defendants must comply with the 2010 Standards pursuant to 28 C.F.R. 36.406 (a)(3). (ECF No. 61.)

On May 19, 2017, Defendants filed a Response to Order to Show Cause asserting that since the ADA violations alleged in Ford's Complaint had been rectified the court should dismiss the action for lack of standing. (ECF No. 62.) Defendants attached county records showing the premises were constructed in 1965, as well as six photographs and an invoice from 801-Asphalt for $6,530.00 to support their position that they had rectified the ADA violations. (ECF Nos. 62-1 through 62-4.) Neither the photographs nor the invoice, however, were authenticated.

The court held a hearing on the Motion to Dismiss and the Objection to Motion to Quash on May 26, 2017. (ECF No. 63.) The court concluded "it needs the record to be supplemented with admissible and authenticated material as to whether defendants are in compliance with the

relevant standards and/or whether compliance is readily achievable including the financial factors required by ADA law." (*Id.*)

On June 29, 2017, Defendants filed a Submission of ADA Compliance ("ADA Submission"), including four declarations. (ECF No. 64.) The Declaration of Guillermo Garcia Gonzalez provides, in relevant part, as follows:

> 2. I am fully familiar with ADA requirements for parking lots.
>
> 3. 801-Asphalt under my direct supervision repaved the handicapped parking stall, aisle, and ramp at Jalisco Market on June 27, 2017.
>
> 4. After the work was done, I personally inspected and measured the handicapped parking stall and aisle at Jalisco Market.
> . . .
>
> 8. In my professional opinion, the handicapped parking stall and aisle at Jalisco Market are now fully ADA compliant. (ECF No. 64-1.)

The Second Declaration of Juan Arechiga provides, in relevant part:

> 2. … I arranged for 801-Asphalt of Springville, Utah to do an asphalt overlay in order to make the handicapped spot ADA compliant, at a cost of $13,060.00.
>
> 3. Until recently, I believed the work done in November 2016, by 801-Asphalt in fact made the handicapped parking spot fully ADA complaint.
>
> 4. Because of issues raised, I arranged for 801-Asphalt to add a further overlay of asphalt to the handicapped parking stall and aisle.
>
> 5. That additional work, at a cost of $4,987.00 was done on June 14, 2017.
>
> . . .
>
> 7. Jalisco Market has a net operating income annually of $7,882.00 as you can see on line 12 of Form 1040 (Page 5) from my 2016 Tax Return, which is the final profit from Schedule C (Page 7). (ECF No. 64-3.)

None of the four declarations attached to the ADA Submission, however, were provided under penalty of perjury, as required by 28 U.S.C. § 1746. On July 31, 2017, Ford filed a

Response to Defendants' Submission of ADA Compliance ("ADA Response"). (ECF No. 65.)

In the ADA Response, which is set forth in detail below, Ford, through her counsel, described

slopes and tolerances which claimed to violate the ADA.  The assertions were based on

photographs taken by Ford's son, who is also her counsel. (ECF Nos. 65-1 through 65-7.)

> In the ADA Response, Ford also argued:
>
> Plaintiffs[sic] note that on at least 6 occasions (the answer, discovery responses, letters from counsel, and Court filings) Defendants have falsely insisted that the subject premises is in full compliance with the ADA.
> . . .
>
> Regarding the Defendants' plea that it is too difficult to comply with the ADA, that such compliance is not readily achievable, Plaintiff's note that Defendant Mark Wilson has submitted no financial information regarding himself or his business. . . . Plaintiff will shortly be filing a discovery motion to compel his compliance with our request.  It is simply impossible to determine whether or not making a single parking space and single access aisle flat to a 2% tolerance level without knowing the financial condition of the Defendants.

(ECF No. 65 at 3.)

After reviewing the ADA Submission and ADA Response, the court decided to convert

the pending motion to dismiss into a motion for summary judgment. The court notified the

parties accordingly and granted them leave to re-file declarations that will comply with 28

U.S.C. § 1746.  (ECF No. 66.)

On September 19, 2017, Defendants filed four additional declarations. (ECF Nos. 68-71.)

All of these declarations comply with 28 U.S.C. § 1746.  The Restated Declaration of Guillermo

Garcia Gonzalez ("Restated Garcia Gonzalez Declaration") provides in relevant part:

> 7.      The accessible parking space has a maximum slope in all directions of less than 1:48 (equating to an[sic] 2.08% slope), as per § 502.4[.]
> . . .
>
> 9.      The adjacent access aisle has a slope of less than 1:48, as per § 502.4[.]

10.     I further verify that the ramp from the street to the parking stall and to the adjoining aisle has a slope of less than 1:12 (equating to an 8% slope), as per § 405.2.

11.     In my professional opinion, the handicapped parking stall and aisle at Jalisco Market is now fully ADA compliant. (ECF No. 68.)

The Declaration of Kevin Hunt ("Hunt Declaration") provides as follows:

2.      I am a licensed general contractor.

3.      I viewed and measured the handicapped parking stall and aisle at Jalisco Market in August 2017, using a tape measure for distances and an electronic level for the slopes.

. . .

5.      My measurements of the accessible parking space show that it has a maximum slope in all directions of less than 1:48 (equating to an 2.08 % slope), as per  §502.4[.]

. . .

7.      My measurements of the adjacent access aisle show that it has a slope of less than 1:48, as per § 502.4[.]  (ECF No. 71.)

On October 4, 2017, Ford submitted two declarations in opposition to summary judgment.  Ford herself testified she has visited the premises to purchase "Mexican ingredients and spices." (ECF No. 73.) She also proffered the Declaration of Dennis Brunetti ("Brunetti Declaration") (ECF No. 72.)  Mr. Brunetti states in relevant part as follows:

1.      I am a Certified International Code Council Building Inspector.

2.      I am familiar with the Americans with Disabilities Act ("ADA") and the 1 Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

. . .

4.      I am professionally qualified to inspect commercial property for compliance with the ADA and ADAAG requirements.

5.      I conducted a site inspection on October 4, 2017[.]

6.     My inspection of the accessibility parking space found that portions of the designated accessible space have slopes or cross-slopes that significantly exceed permitted tolerances under ADAAG Guidelines.

7.     My inspection of the designated access aisles found that portions of the designated accessible space have slopes or cross-slopes that significantly exceed permitted tolerances under ADAAG Guidelines.

8.     My inspection of the designated accessible route from the access aisle to the entrance to the Premises found that portions have a slope that significantly exceeds permitted tolerances under ADAAG Guidelines.

(ECF No. 72.)

The court will now address both pending motions below.

## I.     JUDGE WELLS' ORDER

### A.  STANDARD OF REVIEW

Magistrate judges may issue orders as to nondispositive pretrial matters. 28 U.S.C. § 636 (b)(1)(A). District courts review magistrates' orders under a "clearly erroneous or contrary to law" standard of review." *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000). The clearly erroneous standard applies to factual findings and requires affirmation of the Magistrate Judge's decision unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *Allen v. Sybase, Inc*., 468 F.3d 642, 658 (10th Cir. 2006). The contrary to law standard permits, however, the district court to conduct a plenary review of the magistrate's purely legal determinations, and the court may set aside an order if the wrong legal standard was applied. *Combe v. Cinemark USA, Inc*., No. 1:08-cv-142-TS, 2009 WL 3584883,*1 (D. Utah 2009).

B. <u>ANALYSIS</u>

Reviewing the facts, procedural history, and available case law in this case, and exercising its discretion, this court denies Plaintiff's Objection to Magistrate's Order Denying Defendants' Renewed Motion to Quash on several grounds. First, as Judge Wells stated in her Order, Ford's Complaint only alleges issues with architectural barriers regarding the exterior of the premises. With respect to the interior of the premises, the Complaint contains only a vague reference to Ford's belief regarding potential issues with bathrooms in paragraph 37. This speculative allegation is not enough to allow Ford to conduct a "fishing expedition" of the interior of the premises. Although the court was unable to locate cases in the Tenth Circuit involving both ADA claims and Rule 34 inspections, it found cases from other jurisdictions persuasive. *See Peters v. Winco Foods, Inc.*, 151 Fed. Appx. 549, 580 (9th Cir. 2005) (limiting Rule 34 inspection to specific barriers to access alleged in the complaint alleging violations of ADA); *see also Harty v. SRA/Palm Trails Plaza*, 755 F.Supp.2d 1215 (S.D. Fla. 2010) (same); *Macort v. Goodwill Industries-Manasota*, 220 F.R.D. 377 (M.D. Fla. 2003) (same); *Duldao v. Target Corp.*, No. 8:11-cv-02446VMC-AEP, 2012 WL 6008484 ("Duldao does not have standing to challenge any access barriers beyond those specified in paragraph 15 of the Amended Complaint.").

Second, Judge Wells appears to have finally conceded to the Rule 34 inspection as a result of Ford's fourth supplemental response to Interrogatory No. 3. In that response, Ford alleged the aisles in the market were difficult to navigate "due to product displays and product placement," that a long meat counter was inaccessible "due to products being stacked in front of the counter," that the "carts are located far away from the entrance," and that "the seating area

was difficult to navigate with her walker."  (ECF No. 51-1.)  "Product display," "product placement," and "cart placement," however, are not mentioned anywhere in Ford's Complaint. *See* Complaint, *generally*.  As discussed above, the only reference to the interior of the premises is a vague reference to "bathrooms" in paragraph 37 of the Complaint.  Moreover, "product display," "product placement" and "cart placement," as described by Ford in her fourth supplemental discovery response, are not violations under the ADA.  *See* 2004 ADAAG 36 C.F.R. part 119, section 307 (Protruding Objects).   Most importantly, the Supreme Court has noted that "the federal rules do not intend for insufficient pleadings to be 'weeded out' through discovery." *Apache Tribe of Oklahoma v. Brown*, 966 F. Supp. 2d 1188, 1197 (W.D. Okla. 2013) (*citing Iqbal* 556 U.S. at 684-85, 129 S.Ct. 1937, *Twombly*, 550 U.S. at 559, 127 S.Ct. 127 S.Ct. 1955).  Thus, Ford's discovery responses alone did not entitle her to conduct an inspection of the interior of the premises.

Yet, despite obtaining a partial inspection of the interior of the premises, Ford filed an Objection to the Motion to Quash, arguing she is entitled to a full inspection.  (ECF No. 55.)  In support of her position Ford cites *Steger v. Franco*, 228 F.3d 889 (8th Cir. 2000), and *Doran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008).  *Id*.  Notably, in both of these cases experts conducted the inspections of the interior of the premises, and neither case involves a Rule 34 inspection.

In *Steger*, a blind visitor to a public building, Patrick Burch ("Burch"), argued he had standing to seek relief for all ADA violations in the building, even those unrelated to his disability; the court disagreed.  228 F.3d at 893.  Burch had visited the building and attempted to use the restroom on the first floor, but failed to reach the restroom on the first floor due to lack of Braille signage.  *Id*. at 891-92.  During a hearing, Burch's expert testified the signage on the first

floor was now ADA compliant, but that the building had other ADA violations that could injure blind persons, and that those barriers could be removed with relatively little effort or cost. *Id*. at 892-94. In other words, there was evidence in the record that removal of the barriers was "readily achievable" under 42 U.S.C. § 12182(b)(2). Under those circumstances, the court ruled Burch had standing to seek "relief for any ADA violations in the [building] affecting his specific disability." *Id*. at 894. As discussed below, Ford did not present any evidence here about what was "readily achievable," as is her burden, thus *Steger* is not dispositive.

Similarly in *Doran*, the plaintiff, a paraplegic, identified specific barriers during his deposition, which included barriers in the interior of the 7-Eleven. 524 F.3d at 1038. A month later, his expert conducted a site inspection and identified barriers in the interior beyond those identified by plaintiff during the deposition. *Id*. In the complaint, Doran alleged he had visited the 7-Eleven on ten to twenty prior occasions and that barriers in the store deterred him on at least four occasions from patronizing the store. *Id*. at 1040. Here, Ford alleged in the Complaint "[s]he is certain to return to the location in the future." (ECF No. 2 ¶ 34.) Unlike Doran, Ford did not identify any actual barriers in the interior of the premises in her responses to Interrogatory No. 3, or have an expert conduct the inspection. Thus, neither *Steger* or *Doran* support Ford's position that she should be allowed an inspection of the entire premises. Based on the foregoing, the court DENIES Plaintiff's Objection to Motion to Quash. (ECF No. 55.)

## II.    MOTION TO DISMISS

### A.  STANDARD OF REVIEW

"Article III limits a federal court's jurisdiction to 'cases and controversies.'" *See* U.S. Const. art. III, § 2, cl. 1. "Mootness  is a threshold issue because the existence of a live case or

controversy is a constitutional prerequisite to federal jurisdiction." *Disability Law Ctr. v. Milcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Utah Animal Rights Coal. v. Salt Lake City*, 371 F.3d 1248, 1256 (10th Cir. 2004). Thus, once a controversy ceases to exist, "the action is moot and this court lacks jurisdiction to adjudicate the matter." *Wyoming v. Dept. of Interior*, 674 F.3d 1220, 1228 (10th Cir. 2012) (*citing U.S. v. Seminole Nation*, 321 F.3d 939, 943 (10th Cir. 2002)). When a party seeks only equitable relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991). "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Here, the court converted Defendants' motion to dismiss for mootness into one for summary judgment under Rule 56 because both parties submitted evidentiary materials in support of their positions. *Lowe v. Towne of Fairland, Oklahoma*, 143 F.3d 1378, 1381 (10th Cir. 1998). "[W]hen a party submits materials beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987).

"The purpose of summary judgment is to determine whether trial is necessary." *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate under Rule 56(c) when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial burden to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling, Co*., 968 F.2d 1022, 1024 (10th Cir. 1992). The non-moving party has the burden to show that there are genuine issues of material fact to be determined. *Celotex*, 477 U.S. at 322. To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995). "Conclusory allegations will not create a genuine issue of material fact necessitating trial." *White*, 45 F.3d at 363. The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. LaZBoy Chair Co*., 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences are therefore viewed in the light most favorable to the non-moving party. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

B.     ANALYSIS

1.     Injunction for Alleged ADA Violations

Ford alleges she is "entitled to a permanent injunction requiring Defendants to correct each of the ADA violations identified [in her Complaint] pursuant to 42 U.S.C. § 12188(a)." (ECF No. 2 at ¶ 46.) With respect to injunctive relief and the question of mootness, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Beattie*, 949 F.2d at 1094. Thus, if Defendants have brought the premises into compliance with the ADA, Ford's request for injunctive relief is moot since there is no "live controversy." *See Hummel v.*

*St. Joseph Cnty. Bd. of Comm'rs.*, 817 F.3d 1010, 1022-1023 (7th Cir. 2016) (county's installation of ADA-compliant restrooms rendered moot plaintiff's claim for injunctive relief); *see also Am. Disabled for Accessible Pub. Transp. v. Skywest Airlines, Inc.*, 762 F. Supp. 320, 327 (D. Utah 1991) (because new DOT regulations afforded plaintiffs all relief requested, injunctive relief would be "duplicitous and unnecessary."); *Stewart v. Popeye's Chicken, EON Prop., LLC*, 8:16cv484, 2017WL149959 (Jan. 13, 2017) (because defendant brought restaurant parking lot into full compliance with ADAAG, court granted motion to dismiss for mootness and denied request for injunction). Also, it is the party requesting injunctive relief who must "demonstrate a good chance of being likewise injured in the future." *Beattie*, 949 F.2d at 1093.

The court's instructions at the hearing on Defendants' Motion to Dismiss, and in the Minute Entry of May 26, 2017, were clear:

> The court determined it needs the record to be supplemented with admissible and authenticated material as to whether defendants are in compliance with the relevant standards and/or whether compliance is readily achievable including the financial factors required by ADA law. The court will hold the motion/objection in abeyance pending this briefing and will address them if it finds there is still a live controversy to give the court jurisdiction. Defendant's brief is due on or before June 30, plaintiff's brief is due on or before July 31.

(ECF No. 63.) Ford filed her ADA Response on July 31, 2017. (ECF No. 65.) After numerous requests by Defendants, Judge Wells, and this court--spanning a period of ten months, involving at least two "meet and confer" letters, three discovery motions, four supplementations to discovery responses, an Order to Show Cause and supplemental briefing--in her ADA Response Ford finally answered the question at the crux of this litigation (i.e. Interrogatory No. 3): how are Defendants' premises still not compliant with the ADA?

Ford, through her counsel, answered this question as follows:

The parking lot at the subject premises is still not compliant with the ADA in the following ways:

      1.      The back-left side of the parking stall marked accessible has a slope of 6.5%, significantly greater than the level within a 2% tolerance allowed by the ADA. See photograph Exhibit A.

      2.      On the blue and white wheelchair accessible painted marker in the center of the space, there is a slope of 2.4%, greater than the level within a 2% tolerance allowed by the ADA. See photograph Exhibit B.

      3.      At the top of the accessible space and at the top of the accessible aisle, there are large yellow pillars found in the parking space and in the accessible aisle, constituting an obstacle in the accessible path in violation of the ADA. See photograph Exhibit C.

      4.      At the bottom of the accessible aisle there is a slope of 2.5%, greater than the level within a 2% tolerance allowed by the ADA. See photograph Exhibit D.

      5.      In the accessible aisle, there is a cross-slope of 3.9%, greater than the level within a 2% tolerance allowed by the ADA. See photograph Exhibit E.

      6.      At the top of the accessible aisle, there is a slope of 6.6%, significantly greater than the level within a 2% tolerance allowed by the ADA. See photograph Exhibit F.

(ECF No. 65 at 1-2.) Through this response, Ford substantively admitted the ADA violations alleged in paragraphs 25, 26, 27, and 29 of her Complaint have been rectified—as they are not remotely mentioned on this list or in the ADA Response. Moreover, Defendants submitted new photographs to the court, with amended declarations authenticating such photographs, that establish the premises have: 1) a van accessible space, with an access aisle, 2) an appropriate sign (60) inches above ground surface hanging from the wall in front of the market, 3) a space with the International Sign of Accessibility, as required by the ADAAG, and 4) a ramp from the street to the parking stall and to the adjoining stall with a slope of less than 1:12, as per §405.2. (ECF Nos. 62-3, 68, and 69, including Ex. A-D.) Ford did not raise any objection to these

documents under Rule 56(c)(2), nor did she move to strike them from the record. Thus, this is the evidence in the record as to these matters.

Ultimately, in determining whether an injunction is warranted for these ADA violations, under the circumstances, given that Defendants rectified them, and there is no other evidence before the court, the court finds Ford has not met her burden of showing any "continuing, present adverse effects" or "good chance of injury in the future." *Beattie*, 949 F.2d at 1094. Thus, there is not a "live controversy" regarding these issues before the court. Accordingly, the court denies a request for an injunction as to the violations alleged in paragraphs 25, 26, 27, and 29 of the Complaint.

This leaves the allegations in paragraphs 28, 30 and 31 of the Complaint. In her ADA Response, Ford, through her counsel, alleges the premises are still noncompliant. Specifically, Ford claims the: 1) handicapped parking space has a surface area with slopes exceeding 1:48; 2) premises do not have an accessible route to the entrance; and 3) accessible route has to cross barriers to access with impermissible changes in level. (ECF No. 65.) Through her ADA Response, Ford attempts to add new allegations not contained in the Complaint. For example, paragraph 30 of the Complaint states "there is no accessible route to the entrance of the business" wherein the ADA Response expands that allegation to explain this is due to "large yellow pillars" found at the top of the handicapped parking stall, which faces the front door of the market. Likewise, the Complaint only states in paragraph 31 that there are "[im]permissible changes in level" throughout the access route, while in the ADA Response Ford provides actual measurements of specific slope areas ranging from 2.5 to 6.6%, with attached photographs of the slopes and measurements on levels.

The court, however, cannot consider any of these photographs or measurements as admissible evidence. First, not only are the photographs too dark and/or blurry for the court to discern the numbers on the levels; they are also inadmissible since they are not authenticated. It appears Ford's counsel took both the photographs, and the measurements, mentioned in in the ADA Response. But there is no evidence in the record of 1) how the measurements were taken; 2) whether the measurement method is the proper method under the ADA, 3) whether the measurements are accurate and/or 4) whether the person who took the measurements is qualified to take the measurements under the ADA. Moreover, this court cannot consider statements, sworn or otherwise, from Ford's counsel in this motion on several grounds.

First, Ford's counsel does not meet the standards of a qualified expert under Rule 702 of the Federal Rules of Evidence. Second, Ford never filed an expert report by the deadline on the Scheduling Order, January 6, 2017, or requested a stay of that deadline to coincide with the requested inspection. Third, Rule 3.7 of the Utah Rules of Professional Conduct provides that a lawyer "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless the testimony relates to an uncontested issue." Here, Defendants throughout this litigation have asserted they have resolved the ADA violations alleged in Ford's Complaint. In fact, the issue of what ADA violations remain on the premises has been highly contested. As a result, Ford's counsel cannot under the Utah Rules of Professional Conduct serve both as advocate and witness regarding this subject.[1]

---

[1] Pursuant to DUCivR 83-1.5.1(a), "[a]ll attorneys practicing before this court, . . . must comply with the rules of practice adopted by this court and with the Utah Rules of Professional Conduct[.]"

Regarding the allegations raised in paragraph 28 of the Complaint, Defendants proffered the Garcia Gonzalez Declaration, from an employee at 801-Asphalt, who is "fully familiar with ADA requirements for parking lots," stating that in his "professional opinion the handicapped parking stall and aisle at Jalisco Market are now fully ADA compliant." (ECF No. 64-1 and 68.) Defendants also proffered the Hunt Declaration from a licensed general contractor. (ECF No. 71.) He declared: "My measurements of the accessible parking space show that it has a maximum slope in all directions of less than 1:48" as required by § 502.4 of the 2010 ADA Standards for Accessible Design. (ECF No. 71 at ¶ 5.)

In response, Ford proffered the Brunetti Declaration (ECF No. 72.). Mr. Brunetti represents that he is a certified International Code Council Inspector. *Id.* The Brunetti Declaration reads like the declaration of an expert witness. In fact, Mr. Brunetti testified he "conducted a site inspection on October 4, 2017[.]" *Id.* Mr. Brunetti, however, cannot be treated as an expert witness in this case. Ford did not submit an expert report by January 6, 2017, as required by the Scheduling Order, even though the Defendants filed their motion to dismiss in October 2016. *See* ECF No. 21. Also, this case involves alleged violations of the ADA, not the International Building Code.[2] Further, there is no basis for the court to conclude that a certified International Code Council Building inspector might be competent to testify on the ADAAG requirements asserted in the Brunetti Declaration.

---

[2] The Court reviewed the 2015 International Building Code, and although Ch. 11 addresses accessibility issues, it does not mention the ADA anywhere. In fact, there is no mention of any slope requirements for public or commercial properties, or the slope requirements referenced in § 502.4 of the 2010 ADA Standards for Accessibility Design.

Even viewing the facts in the light most favorable to Ford, and assuming Mr. Brunetti were competent to render testimony about the ADA, the court will not consider the self-serving conclusory allegations in his declaration for purposes of this motion pursuant to Rule 56(c)(4) of the Rules of Civil Procedure. It requires that "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Unlike the Hunt Declaration, the Brunetti Declaration does not "set out facts that would be admissible in evidence." Mr. Brunetti simply testifies "portions of the designated accessible space have slopes or cross-slopes that significantly exceed permitted tolerances allowable under ADAAG Guidelines." (ECF No. 72.) But the declaration lacks factual detail as to how these conclusions were reached and what actual ADAAG requirements were considered. The court does not know: 1) if measurements were taken; 2) if so, how they were taken; or 3) whether the measurement method is the proper method under the ADA. The court is disinclined to allow Ford to sidestep a lack of evidence supporting her claims by submitting a declaration that merely incorporates conclusory allegations tailored to create factual disputes to defeat summary judgment. When reviewing declarations, the Tenth Circuit has held that "a conclusory statement, devoid of facts, is insufficient to create a genuine issue if material fact." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1252 (10th Cir. 2017) (internal citation omitted). Accordingly, the court disregards Mr. Brunetti's testimony.

Since the testimony in the Hunt Declaration is uncontested, it appears the violations alleged in paragraph 28 of Ford's Complaint have been remedied. In fact, Defendants also provided declarations, asserting they spent about $18,047.00 between November 2016 and the present

resurfacing the parking lot on the premises to make the handicap parking spaces and ramps ADA compliant. (ECF Nos. 64-3 and 70.) This fact is also undisputed. The court thus takes judicial notice that given the time and resources Defendants spent making the modifications on the premises, the modifications are permanent, and the prior ADA violations on the premises are not reasonably expected to reoccur. *See Tandy v. City of Wichita,* 380 F.3d 1277, 1281-82 (10th Cir. 2004) (where changes are "permanent in nature" and "foreclose a reasonable chance or recurrence" plaintiff's claims can be mooted).

Moreover, the ADA sets out specific factors to be considered in determining whether removal of barriers is "readily achievable:" 1) nature and cost of the action; 2) financial resources of the facility involved; 3) number of persons employed at the facility; 4) the effect on expenses and resources; 5) impact of such action upon the operation of the facility; 6) overall financial resources of the covered entity; 7) overall size of the covered entity with respect to number of its employees; 8) the number, type and location of its facilities; 9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and 10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. 42 U.S.C. § 12181 (9)(A)-(D).

In the Tenth Circuit, "plaintiffs bear the initial burden of suggesting a method of barrier removal and proffering evidence that their suggested method meets the statutory definition of 'readily achievable.' . . . If plaintiff satisfies this burden, the burden then shifts to the [defendants] to rebut that showing and prove that the suggested method is not readily achievable." *Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1005 (10th Cir. 2001). Here, Ford never suggested to Defendants any method of barrier removal

despite Defendants' numerous requests to obtain this information from Ford through "meet and confer letters" and discovery requests. Since Ford never met her initial burden, the burden never shifted to Defendants to rebut or disprove that their method for rectifying any of the alleged violations is not readily achievable.

As stated above, the only evidence before the court is that the allegations in paragraph 28 of the Complaint have been rectified. Thus, there is no longer a live controversy, and the court finds Ford has not met her burden of showing any "continuing, present adverse effects" or "good chance of injury in the future." *Beattie,* 949 F.2d at 1094. Accordingly, the court denies a request for an injunction as to the violations alleged in paragraph 28 of the Complaint.

As for the allegations in paragraphs 30 and 31 in the Complaint, the new pictures provided by Defendants, which were not challenged by Ford, show the front door of the market and the three yellow pillars referenced in the ADA Response. These yellow pillars, or protective bollards, are used by private businesses and government agencies to protect public spaces, and the people in them, from car ramming attacks. Oakes, Charles, Bollard: Non-Crash and Non-Attack-Resistant Models, Blue Ember Technologies, LLC (Sept. 2, 2016), http://www.wbdg.org/resources/bollard-non-crash-and-non-attack-resistant-models. Thus, they would be important in a premise like Jalisco Market where the front door is close to the street. The allegation in the ADA Response that these pillars "are an obstacle in the accessible path in violation of the ADA" is not contained in the Complaint. As to the allegations in the ADA Response of impermissible slopes, the evidence in the record is that "the handicapped parking stall and aisle at the Jalisco Market are now fully ADA compliant." (Dkt. Nos. 68 and 71.) Although the Brunetti Declaration alleges the access aisles and accessible route

have slopes that "significantly exceed permitted tolerances," as discussed more fully above, the court does not consider any of this testimony admissible to create an issue of fact. (ECF No. 72.)

Also, there is no evidence that Ford satisfied her burden of suggesting a method of barrier removal as to the allegations in paragraphs 30 and 31 either, as required in the Tenth Circuit. *Colorado Cross Disability Coal*, 264 F.3d at 1005. Again, the deadline to amend pleadings was October 4, 2016. Ford never filed an amended pleading to add the new allegations raised for the first time in the ADA Response. Thus, Ford cannot ask this court to issue relief that exceeds the scope of her complaint. *See Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 893 (10th Cir. 2008) ("For purpose of determining issue of mootness, we will rely on the claims and request for relief presented in the Complaint[.]") Nor can Ford accuse Defendants of not rectifying the violations sooner when it is Ford who "hid the ball" throughout these proceedings. Accordingly, the court also denies injunctive relief as to the violations alleged in paragraph 30 and 31 of the Complaint.

2.    Declaratory Relief

"Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other [claim]." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). Thus, the Tenth Circuit looks "beyond the initial controversy which may have existed at one time and decide[s] whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Beattie*, 949 F.2d at 1094 (internal punctuation and quotations omitted). The reason for this is that "a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Id.* at 1093. "A

court will decide only real controversies in which the rights of parties are actually involved, not abstract questions. It will not proceed to a determination when its judgment or decree cannot grant relief for want of a subject matter upon which it could operate with effect." *Miller v. Udall*, 368 F.2d 548, 549 (10th Cir. 1966).

Ford asks this court to enter a judgment "declaring an actual controversy between Plaintiff and Defendants with regard to each of Defendants' violations of the ADA." (ECF No. 2 at ¶ 50.) Defendants argue this request is moot because the alleged controversies have been rectified by Defendants' remedial measures, and thus such a declaratory judgment would in essence be an advisory opinion. (ECF No. 26 at 7.)

As addressed above, it is undisputed the ADA violations alleged in paragraphs 25 through 31 of Ford's Complaint have been resolved or mooted. Likewise, there is no evidence in the record of potential injury in the future. Under these circumstances there is no real controversy for the court to resolve. Since "the Declaratory Judgment Act is not to be used as a means of securing a judicial determination of moot questions," Ford's request for declaratory relief is also denied. *Miller*, 368 F.2d at 549.

3. Nuisance

Ford alleges Defendants' failure "to remove architectural barriers to access by persons with disabilities, as required by the ADA, has created a public nuisance." (ECF No. 2 at ¶ 54.) Defendants assert Ford failed to plead a public nuisance claim because her alleged injury is not covered by the nuisance statute and is not common to the general public as required to constitute a public nuisance. (ECF No. 26.) Pursuant to § 78B-6-1101(1) of the Utah Code, a public nuisance "is anything which is injurious to health, indecent, offensive to the sense, or an

obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." A nuisance may include drug houses, gambling, criminal activity and party houses. *Id*. at (2).

On its face, Ford's alleged injury is not covered by Utah's nuisance statue. As the court has reviewed the case law pertaining to what constitutes a "public nuisance," it appears that as a matter of public policy the courts have been inclined to limit "public nuisances" to interests that affect the general public, rather than one or several individuals. *See Riggins v. Dist. Court of Salt Lake Cnty*, 89 Utah 183, 51 P.2d 645, 662 (Utah 1935) ("Public nuisances are those which 'violate public rights, and produce a common injury; when they injure or annoy that portion of the public which necessarily comes in contact with them.'"); *see also Monroe City v. Arnold*, 452 P.2d 321, 322 (Utah 1969) (farm of 200 pigs which permeated the neighborhood with "noxious and unpleasant odors" and disturbed people's sleep with squealing amounted to a public nuisance); *Thackery v. Union Portland Cement Co*., 231 P. 813 (Utah 1924) (a cement plant that emits "small particles of cement, dust, and smoke" that then "fall[s] upon [nearby] premises"). The court was unable to locate a Utah case supporting the proposition that the inability to access someone's property is a public nuisance. *See Blonquist v. Summit Cty*., 25 Utah 2d 387, 389 (1971) ("an obstruction in a private road is not a nuisance").

This makes sense because the ADA already provides strong protections for the specific types of violations being alleged by Ford. The ADA is meant to address the rights of individuals with disabilities. The allegations made in the Complaint, involving noncompliant slopes in parking stalls and ramps, as well as noncompliant parking signage, is precisely the types of wrongs the ADA is meant to address. *See* 2010 ADA Standards for Accessible Design, Sections

405 and 502.  Thus, the allegations in Ford's Complaint do not rise to the level of a public nuisance and thus are likewise dismissed.

    4.  Unjust Enrichment

Finally, Ford alleges "Defendants have gained economic advantage and have been unjustly enriched by 'cutting corners' in construction to exclude building features intended to aid access by disabled persons."  (ECF No. 2 at ¶ 60.)  Defendants, however, provided county records showing the building was built in 1965, before they purchased it.  (ECF No. 62-1.)  Thus, Defendants were not responsible for the premises' construction.  Moreover, Title III of the ADA does not allow an equitable remedy in monetary form for unjust enrichment or punitive damages, as requested by Ford's Complaint.  *See* 42 U.S.C. § 12188; *see also Disabled Rights Action Comm. v. Santa Fe Gaming Corp.*, 32 Fed. App'x. 820, 821 (9th Cir. 2002) (remedial provisions of the ADA do not allow remedy of unjust enrichment).  In *Disabled Rights Action*, the Ninth Circuit addressed the plaintiff's unjust enrichment claims based on ADA violations and found that "the plaintiffs are in essence pursuing punitive damages [under an enrichment claim] for defendant's alleged ADA violation," but such "[d]amages are not an available remedy for violation of Title III under the ADA."  *Id.*  In fact, under the ADA monetary damages are reserved for violations involving a "pattern or practice of discrimination"—such is not alleged here.  *See* 42 U.S.C. § 12188(b)(1)(B).  Thus, Ford's claim for unjust enrichment is likewise dismissed as a matter of law.

For the reasons stated, the court orders as follows:

    1.    The Objection to Magistrate's Order Denying Defendants' Renewed Motion to Quash (ECF No. 55.) is DENIED.

2.      The Motion to Dismiss for Mootness (ECF No. 26.) is GRANTED.

On a separate issue, given the procedural history of this case, the court cannot help but question the motives and tactics of Ford and her counsel.  For example, Ford did not request the Rule 34 inspection until October 26, 2016, three weeks past the deadline to amend the pleadings. Likewise, her son and counsel, rather than an ADA expert, conducted the Rule 34 inspection three months past the expert report deadline.  Despite numerous "meet and confer letters" and requests by Judge Wells, Ford continued to obscure the requirement of Rule 26 to completely and correctly answer Interrogatory No. 3, causing unnecessary delay and cost.

Moreover, Ford's counsel, her son, filed 114 ADA cases naming her Plaintiff between April 5, 2016 and January 19, 2017.  Ford voluntarily dismissed 101 of these lawsuits, with prejudice, presumably based on settlements.  Only eight of Ford's active suits currently have scheduling orders.  "Ford [uses] a form Complaint that is nearly identical in each of the 100+ lawsuits they have filed; varying only the paragraphs discussing the defendants and their business." (*See* 2:16cv00780-TC, ECF No. 39 at 3.)  This type of "shotgun litigation" undermines both the "spirit and purpose of the ADA." *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004).

Notably, in only three of the 114 cases referenced above--this case, *Ford v. Timp Valley Floral* 2:16cv00644 and *Ford v. H Unit Five* 2:16cv00780—have dispositive motions been filed. These are also the only cases where Ford has requested a Rule 34 inspection.  In light of the volume of lawsuits, and procedural posture of the cases, the court cannot view the Rule 34 requests as a simple coincidence.  The only apparent reason for requesting the Rule 34 inspections in these three cases would be to promote a settlement.  In fact, the premises at Timp

Valley Floral did not even have a "public restroom"—one of the allegations in Ford's Complaint used to obtain an inspection here. (*See* 2:16cv00644, ECF No. 23 at 2.) In the *H Unit Five* matter, the case was set to settle for $4,000; Ford revoked her settlement offer when Judge Warner issued a ruling denying the Rule 34 inspection and then demanded $10,000. (*See* 2:26cv00780-TC, ECF No. 32 at 1 and ECF No. 39 at 3.) And here, at the eleventh hour, Ford claims she plans to file a motion to compel Defendant Wilson's financial information. It is not apparent to the court how this information is relevant or proportional to needs of her case, especially after the close of discovery. For these reasons, the court is concerned Ford's counsel's conduct in this matter may be contrary to the Utah Standards of Professionalism and Civility and the Utah Rules of Professional Conduct. [3]

DATED this 12th day of October, 2017.

BY THE COURT:

Clark Waddoups
United States District Court Judge

---

[3] "[T]he district court has ample discretion to 'comment, sternly when necessary, on a lawyer's performance' in order to 'assure the proper conduct of proceedings in his or her court.'" *Butler v. Biocore Med. Tech., Inc.*, 348 F.3d 1163, 1169 (10th Cir. 2003) (internal citation omitted) (Affirming order of district court finding that appellant, an attorney, had violated the Kansas Code of Professional Conduct and Kansas Rules of Professional Conduct).